Filed 2/20/24  P. v. Robinson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>GARETH WARREN ROBINSON,<br><br>        Defendant and Appellant. | F084462<br><br>(Super. Ct. No. CRF62544)<br><br>**ORDER MODIFYING OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the unpublished opinion filed herein on January 25, 2024, be modified as follows:

1. On page 10, in the second full paragraph, the third sentence is deleted and replaced with:

   Accordingly, it is not reasonably probable a juror would have concluded that defendant acted without specific intent, on a mistake of fact, or while unconscious at the time of the incident.

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

PENA, J.

WE CONCUR:

DETJEN, A.P.J.

SNAUFFER, J.

Filed 1/25/24  P. v. Robinson CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>              v.<br><br>GARETH WARREN ROBINSON,<br><br>        Defendant and Appellant. | F084462<br><br>(Super. Ct. No. CRF62544)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Edrina Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Detjen, Acting P. J., Peña, J., Snauffer, J.

Appellant and defendant Gareth Warren Robinson was convicted at a jury trial of committing a lewd act on a 14-year-old child. On appeal, defendant claims his defense counsel was incompetent for failing to present testimony from the defendant's psychiatrist regarding his mental health diagnosis. We affirm the judgment.

## FACTUAL BACKGROUND

### *Prosecution Evidence*

On March 30, 2018, defendant picked up his niece, the confidential victim (hereafter "C.V."), from her father's home in the afternoon. C.V. was 14 years old at the time, and she considered defendant to be one of her best friends. Defendant and C.V. would often get food and go to the mall together. Defendant's girlfriend was in the car with defendant and C.V. at one point in the afternoon. However, defendant dropped his girlfriend off at her home after they had an argument and broke up. Defendant and C.V. went to the home of C.V.'s mother and they stayed to talk with her mother for a while.

Defendant decided to take C.V. to get fast food, and they drove around looking for a party after they finished eating. Defendant was unable to find the party after driving around the town, and he pulled the vehicle over on the side of the road to urinate. Once defendant returned to the vehicle, he moved his left hand over to the passenger side of the vehicle and grabbed C.V.'s left breast over her shirt. C.V. told defendant to stop and moved her body away from him. Defendant apologized to C.V., and then he tried to kiss her. C.V. pulled away from defendant, and she told him to take her home. Defendant repeatedly stated, "sorry" on the short drive back to the home of C.V.'s father.

Upon C.V.'s return to her father's house around 1:00 a.m., she ran into her brother's room and told him what defendant did. C.V's brother told her to report the incident to her mother and the police. C.V.'s mother initially yelled at her because she was calling late, and her mother expected her to be home by 9:00 p.m. on school nights. C.V. was crying on the phone, and her voice sounded frantic and scared. C.V. told her mother about what happened with defendant.

C.V.'s mother then called defendant, and she confronted him with C.V.'s disclosure.  Defendant responded that he did not know what happened, and he kept repeating, "I don't know what I was doing."  Law enforcement arrived at the home, and C.V. explained to law enforcement how defendant touched her.  C.V. was crying during most of her interview with law enforcement, and she was described as "distraught."

## PROCEDURAL BACKGROUND

On February 25, 2020, a complaint was filed in the Superior Court of Tuolumne County charging defendant with one count of committing a lewd act on a 14-year-old child.  (Pen. Code, § 288, subd. (c)(1).)[1]  On March 14, 2022, the prosecution moved in limine to prohibit the introduction of evidence or opinion that defendant suffered from any mental illness at the time of the incident unless that witness had been duly qualified by the court to render such an opinion.  The court granted the motion without any objection by defense counsel.

On March 15, 2022, the jury found defendant guilty.  The trial court suspended imposition of the sentence and placed defendant on probation for two years.  Defendant was ordered to serve six months in jail as a condition of his probation.  A timely notice of appeal was filed by defendant on June 9, 2022.

## DISCUSSION

Defendant contends that his trial counsel was ineffective because he failed to introduce testimony from defendant's psychiatrist about defendant's mental health issues.  The People argue that defense counsel's performance did not fall below an objective standard of reasonableness, and they also assert that defendant was not prejudiced by the alleged deficiency.

---

[1]    All further statutory references are to the Penal Code.

### A. *Factual Background*

#### 1. **Sheriff's Report**

Deputy Skyler Waid with the Tuolumne County Sheriff's Department prepared a report summarizing the investigation of the incident on March 31, 2018. After Waid took C.V.'s statement, he spoke with C.V.'s mother. C.V.'s mother indicated that defendant had a "history of mental health issues, and he was diagnosed with schizophrenia when he was in his late teens." Defendant's mother, J.R., called C.V.'s mother in the presence of Waid, and the call was placed on speaker phone for Waid to speak to J.R. J.R. explained that defendant was having a " 'psychotic break,' " and she repeatedly made statements like " '[defendant]'s not in his right mind, right now.' " J.R. also said that defendant was suffering from mental illness and not taking his medication. According to J.R., defendant told her that "he looked over at C.V. a few times and saw his girlfriend." Waid opined in the report that, "[i]t seemed like [J.R.] was trying to make excuses for [defendant]."

#### 2. **Preliminary Hearing**

At the preliminary hearing held on July 24, 2020, Waid testified that someone mentioned defendant suffered from schizophrenia, and defendant's mother J.R. described defendant's reporting of a hallucination. J.R. also told Waid that, "when [defendant] was driving the car, he was looking towards the passenger seat, and he was seeing his girlfriend." Defense counsel requested that the trial court reduce the charged offense to a misdemeanor pursuant to section 17, subdivision (b). The prosecution opposed the request and argued that defendant's self-serving statements were the only evidence to support his claim of hallucinating at the time of the incident.

#### 3. **Pretrial motion**

In advance of trial, the prosecution moved in limine to prohibit the introduction of any evidence or opinion that the defendant suffered from any mental illness at the time of the incident unless the witness was qualified by the court to render such an opinion. The motion explained that the prosecution had not been provided any evidence regarding

defendant's mental health conditions from any experts that might testify on behalf of the defense. Defense counsel had no objection "as far as an opinion goes," and he informed the trial court that he did not have an expert to testify about defendant's mental illness. The court granted the motion.

### 4. Trial proceedings

On March 14, 2022, defense counsel concluded his opening statement to the jury by stating, "The evidence is going to show a doubt as to what [defendant]'s mental state was at the time of the incident, and also we're going to go into a lot more detail about what happened in the car before, during, and after the alleged incident."

During the second day of the trial, defendant's mother was about to testify when the prosecution requested that the trial court "impress upon her the [c]ourt's order not to bring out any testimony about any medical conditions or things of that nature." Defense counsel indicated that defendant's mother thought he was having a psychotic break on the night of the incident, but the court clarified that was something she was not qualified to provide an opinion on. The court explained that defendant's mother could state that defendant was "acting erratic, he was sounding crazy …. But what she can't say is, he has history of mental health issues, or he has been diagnosed with such and such. Those would all be opinion testimony or hearsay, not her personal knowledge."

Defense counsel then responded, "Well … there's an accident when [defendant] was 17 [years old] that led to the schizophrenia, and so she would have been there with the doctor as his mother, primary caregiver, and I think that she should be able to testify to that." The trial court asked how defendant's mother could testify to that extent without injecting hearsay testimony from a doctor. The court also asked defense counsel, "Are you expecting that [defendant's mother is] going to be able to come in and say he's been diagnosed as a schizophrenic?"

Counsel for the defendant eventually argued that, "[Defendant's mother] should be allowed to say that he suffers from schizophrenia because that's part—I mean, it's been

5.

[10] years since the accident. It's been part of the family knowledge. The sister knows, and everybody in the family knows. And I don't think at this point in time that the diagnosis— .… [¶] I think it's trustworthy hearsay that should be admitted and it goes to a medical condition."

The trial court then stated, "Well, I'm assuming that if he's been diagnosed that way, then there are medical people that treat him for that disease or that mental health illness that could come and testify. But you can't end-around that by bringing the [defendant's] mom in to say it. [H]ow do we know it actually happened?" Defense counsel responded as follows: "Well, at this point in time I'm staying away from it. I didn't want to ask the sister about that. [¶] But [his sister] says in the police report that he suffered from schizophrenia. And the [defendant's] mother also says in the police report that he was off his meds at that point in time."

The trial court eventually ruled that defendant's mother would not be allowed to testify regarding a mental health diagnosis of defendant. She would be allowed to testify about defendant's erratic behavior at the time of the incident and in the past, but she could not speak to any diagnoses. Defendant's mother was brought into the courtroom and admonished not to testify that defendant had a mental illness or experienced a "psychotic break" because those opinions were limited to expert testimony.

### 5. Sentencing

The probation report states as follows:

> "[Defendant] stated he was experiencing a mental health condition that caused him to believe his niece was his girlfriend. He reportedly had other mental breaks previously but has since been prescribed an antipsychotic medication that has prevented subsequent episodes. A report from the defendant's [p]sychiatrist, Dr. Jerry Jones, revealed he has suffered recurrent psychotic episodes starting in 2014, when he was reportedly hospitalized in a psychiatric facility for several weeks. [Jones] specifically mentioned the defendant believing his mother was not his mother, and that his actual mother had been killed. [¶] This officer tends to be skeptical towards the claims the defendant is making, as they are hard

6.

to verify and easy to misuse. However, the letter from [Jones] undeniably shows [defendant] has a psychotic disorder that could result in the type of thinking he asserts occurred in this incident, and the medications he is taking appear to be consistent with someone suffering from these issues."

An April 1, 2022 letter from Jones that was attached to the probation report stated that defendant was diagnosed with a psychotic disorder not otherwise specified in 2015, and he was prescribed medication. Jones did not see defendant from November 2016 to April 2018. Defendant took his medications only intermittently during that period of time. Defendant returned to Jones on April 4, 2018, because of his claim of "recurrent psychotic symptoms including thinking people were other than who they were." It was asserted that defendant called his mother "babe" as if she were his girlfriend. Defendant reported that he no longer had delusions that people were other than who they were after taking his prescribed medication for four weeks.

At defendant's sentencing hearing held on May 13, 2022, defense counsel argued that there was "significant evidence of mental issues" to allow consideration of mental health court. However, he acknowledged that defendant's conviction was not eligible for mental health court. Defense counsel then argued that defendant's mental health was a mitigating circumstance to consider and that there was "significant evidence of some mental issues." The trial court followed the recommendation in the probation report for a two-year term of probation and six months in jail. In reaching its decision, the court explained that, "I have to look at the circumstances in light of the mental health issues that were clearly evident presented in the evidence at the trial and also in the probation report, and the significant punishment to be registered as a sex offender, [lose] his license and also spend six months in county jail."

### B.  *Legal Principles and Standard of Review*

Under the federal and state Constitutions, a criminal defendant is entitled to the effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) The burden of proving ineffective assistance of

counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 (*Strickland*).) The defendant must prove prejudice as a " 'demonstrable reality.' " (*People v. Williams* (1988) 44 Cal.3d 883, 937.) Mere speculation as to the effect of counsel's errors or omissions is not enough. (*Ibid.*)

### C. Analysis

Defendant contends reversal is required because he was prejudiced by his counsel's deficient performance. However, we need not determine if defense counsel's actions fell below an objective standard of reasonableness because defendant cannot demonstrate that counsel's alleged deficient representation prejudiced him, i.e., there is a reasonable probability that, but for counsel's purported failings, defendant would have received a more favorable result. (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541; *Strickland*, *supra*, 466 U.S. at p. 687.) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112.) Stated differently, a "defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

Defendant, in support of his argument that he was prejudiced, primarily argues that a mental health defense would have been "strong" with testimony from Jones, and he claims that it was superior to the theory actually utilized by the defense at trial. He relies upon statements from the probation officer that the letter from Jones supports a claim that

defendant could have been suffering from delusions at the time of the incident. Defendant also argues that the trial court's general comments on the evidence regarding defendant's mental health issues lend additional credibility to Jones's letter. He asserts that this alternative "mental health defense" could have created reasonable doubt in the mind of a juror due to the absence of specific intent, a mistake of fact, or lack of consciousness. Accordingly, defendant concludes that a juror could have voted to acquit based on testimony from Jones.

Even if the alternative mental health defense appears more favorable to defendant in hindsight, we find that the result would have been the same. The evidence of defendant experiencing a brand-new symptom with such a specific delusion at the time of the incident would not have changed the result. He had not seen Jones since November 2016, and he did not visit Jones again until the month following the incident. Defendant only claimed that he was mistaking the identities of persons known to him after law enforcement began its investigation of the incident. Once he began taking medications, he reported that he did not experience this type of symptom again. In addition, this purported delusion is not sufficiently similar to the 2014 incident, where defendant reportedly believed that his mother was deceased and not who she claimed to be.

The evidence that defendant was actually experiencing a delusion that resulted in him mistaking C.V. for his girlfriend is based solely on defendant's subjective and self-serving statements that were made to third parties. The fact that defendant did not immediately convey such a mistake to C.V. at the time of the incident lends more credibility to the prosecution's evidence that he acted deliberately and repeatedly apologized to C.V. on the drive home. The jury would have been able to clearly recognize that defendant's newly developed mental health symptom was nothing more than a fabricated excuse to avoid criminal prosecution. Thus, defendant's contention that the verdict would have been different with testimony from Jones is based on scant speculation. (See *People v. Smith* (2011) 198 Cal.App.4th 415, 429–430 [rejecting an

9.

ineffective assistance of counsel claim because it was not reasonably probable the jury would have concluded that defendant did not commit the relevant offense].)

This alternative theory is also inconsistent with defendant's own conduct at the time of the incident. Defendant had recently broken up with his girlfriend, and she had not been with C.V. and defendant for a considerable period of time. It would be a considerable stretch for the jury to accept that defendant would have greeted his newly ex-girlfriend by touching her breast, ignoring her rejection of that advance, and then attempting to kiss her. Furthermore, there is no evidence that defendant ever mentioned this mistaken delusion to anyone except for his mother and psychiatrist after law enforcement had already been contacted. After weighing the available evidence, its strength, and the strength of the evidence the prosecution presented at trial, we conclude the result would not have been different. (*In re Thomas* (2006) 37 Cal.4th 1249, 1256–1257.)

In sum, there would be no substantial basis for a reasonable juror to conclude that defendant's conduct was the result of a mental illness if testimony from Jones had been presented. The record simply does not support defendant's unsubstantiated claim that testimony from his psychiatrist would have provided exculpatory evidence. Accordingly, it is not reasonably probable the jury would have concluded that defendant acted without specific intent, on a mistake of fact, or while unconscious at the time of the incident. Defendant has failed to establish the second prong required for a successful claim of ineffectiveness of counsel—prejudice—and his claim must fail.[2] (See *Strickland*, *supra*, 466 U.S. at pp. 695–696; *People v. Price* (1991) 1 Cal.4th 324, 440.)

---

[2]    Defendant filed a petition for writ of habeas corpus on August 10, 2023 (case No. F086684), that reiterates his contention regarding his ineffective assistance of counsel claim and provides a declaration of trial counsel explaining the reason for proceeding without testimony from defendant's psychiatrist. We previously issued an order stating that consideration of the petition was deferred pending the outcome of the

10.

## DISPOSITION

The judgment is affirmed.

---

present appeal. Because defendant has failed to establish prejudice by counsel's decision, in a separate order we have denied the petition for writ of habeas corpus.